IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Tina Dodd, ) | |
| ) | Civil Action No. 6:04-0469-HFF-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| City of Greenville, Chief Willie ) | |
| Johnson, Detective Bobby Carias, ) | |
| Detective Craig Gardner, and ) | |
| Captain Willie Harper, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the motions of two defendants, Detectives Bobby Carias and Craig Gardner, for summary judgment pursuant to Federal Rule of Civil Procedure 56. In her original complaint, the plaintiff alleged causes of action for gender discrimination under Title 42, United States Code, Section 1983, violation of her First Amendment rights, outrage, breach of contract, and breach accompanied by fraud.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Defendants Carias and Gardner filed separate motions for summary judgment[1] as to all claims asserted against them. The plaintiff opposed the motions with regard to the claims for gender discrimination and outrage, but did not address the remaining claims. Accordingly, to the extent the plaintiff has alleged claims for First

---

[1]Another motion for summary judgment has been filed by the remaining defendants and will be considered by separate report, as it concerns issues and claims not present in the instant motions. The motions were fully briefed in early March; however, the motions were referred to this court on May 26, 2006.

Amendment violation, breach of contract, and breach of contract accompanied by fraud against these defendants, summary judgment should be granted as to those claims.

## **FACTS PRESENTED**

The plaintiff, who is a female, is employed by the defendant City of Greenville as a police officer. Defendants Carias and Gardner are also police officers and are coworkers of the plaintiff. The plaintiff alleges that since 1996 City of Greenville police officers "intentionally held down the transmitter buttons on their walkie-talkies so as to make the plaintiff unable to transmit over her walkie-talkie" (comp. ¶ 6). Carias admits to participating with regard to another officer, but claims he never did it to the plaintiff (Carias dep. 8-9). The plaintiff has presented no evidence showing that these defendants were involved in the incidents she describes.

In February 2000, the plaintiff found an audiotape in her desk. The plaintiff claims the speaker in the tape made threats against the plaintiff and her son. There does not appear to be any allegation or evidence that either of the defendants were involved in this incident.

Shortly after midnight on June 5, 2003, the plaintiff received a call on her cellular phone at her residence. The plaintiff answered, and the speaker, who was later identified as defendant Carias, said, "Is this Tina Dodd?" The plaintiff said, "May I ask who's calling?" Carias responded, "You bitch, I hate you, I'm going to get you, watch out," before disconnecting. He then called back, saying such things as "I'm going to get you, I hate you, bitch, you lazy bitch, watch out I'm going to get you" before the plaintiff disconnected the call. Around 3:00 a.m., the plaintiff received a third telephone call with someone breathing heavily into the telephone. The plaintiff turned off her cellular telephone to prevent further calls. According to the plaintiff, defendant Carias in making the calls used defendant Gardner's cellular telephone, with Gardner's consent (comp. ¶¶8-10). Defendant

Gardner testified that he dialed the plaintiff's telephone number at the urging of other officers, but the call was dropped before he heard the plaintiff answer. Later, he noticed that a call had been made back to his telephone, and he redialed the last number called. When the plaintiff answered, he hung up. Gardner testified that he could tell by the plaintiff's tone that she was "not happy" (Gardner dep. 9-10). Defendants Carias and Gardner were off duty in Columbia, South Carolina, attending training at the South Carolina Law Enforcement Academy at the time the calls were made (Gardner dep. 19-20).

The plaintiff reported the telephone calls to defendant Captain Willie Harper. According to the plaintiff, Captain Harper instructed her not to file a misconduct complaint. She claims that when the defendants failed to advise her of their investigation and whether any disciplinary action would be forthcoming, she filed her complaint. After the internal investigation, defendants Gardner and Carias received suspensions without pay for three days and five days respectively (Harper dep. 15).

The plaintiff claims that the acts of defendants Carias and Gardner were outrageous, and she suffered "severe and extreme emotional distress, public humiliation, and embarrassment" as a result of these defendants' actions (comp. ¶¶ 27, 29). The plaintiff claims that she visited her family doctor about her inability to sleep, and she talked to relatives and friends. She was prescribed sleeping pills, but she did not take them, and her weight fluctuated (Carias m.s.j., ex. C, pl. dep. 56-60). In her deposition, the plaintiff testified that her insomnia and weight fluctuation occurred from 1999 to 2001, several years prior to the telephone calls involving these defendants. *Id.*

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

3

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).  Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

*Outrage*

To establish the tort of intentional infliction of emotional distress, or outrage, the plaintiff must establish the following:  (1) the defendant intentionally or recklessly inflicted severe emotional distress, or knew that distress would probably result from his conduct; (2) the defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.  *Shupe v. Settle*, 445 S.E.2d 651, 655 (S.C. Ct. App.1994) (citing *Holtzscheiter v. Thomson Newspapers, Inc.*, 411 S.E.2d 664 (S.C. 1991)).

In *Wiggins v. Browning*, C. A. No. 6:94-1552-3AK, 1995 WL 1939177 (D.S.C. 1995), the Honorable G. Ross Anderson, Jr., United States District Judge, found that the plaintiff failed to demonstrate sufficient evidence of outrage despite evidence that the defendant supervisor undermined her authority, told her that if she did not retire he would subject her to such stress that she would be forced to retire, discussed her work

5

performance at a public place, and stripped her of her job duties. The supervisor also knew that the plaintiff was under great stress and that her health was affected. *Id.* at *4. In analyzing the outrage claim, the court stated:

> As noted in *Todd [v. South Carolina Farm Bureau Mut. Ins. Co.*, 321 S.E.2d 602 (S.C. Ct. App. 1984)]*, the Restatement gives three guidelines which help define the scope of the tort. The first concerns the outrageousness of the behavior. The second guideline (in comment e) suggests that the element of outrageousness is more easily found in cases in which the defendant was in actual or apparent authority over the plaintiff. The third guideline (in comment f) suggests that the element of outrageousness is more easily found in cases in which the defendant knows that the plaintiff is especially susceptible to emotional distress. South Carolina courts do require the extremity described in the Restatement.

*Id.* at *2.

Viewing the evidence in a light most favorable to the plaintiff, defendant Gardner's actions consisted of letting defendant Carias use his cellular telephone so that he could make telephone calls to the plaintiff in which Carias called the plaintiff "bitch" and threatened to "get" her, and making a telephone call himself to the plaintiff in which he hung up after the plaintiff answered. Defendant Gardner's conduct does not meet the standard of an outrage claim as it does not "exceed all possible bounds of decency."

The plaintiff's allegations against defendant Carias are more serious. However, assuming the telephone calls were made as the plaintiff described, the conduct also does not meet the standard for an outrage claim.

The alleged conduct here is comparable to other cases rejecting outrage claims. For example, in *Shipman v. Glenn*, 443 S.E.2d 921 (S.C. Ct. App. 1994), the court affirmed summary judgment of an outrage claim where the plaintiff, who suffered from cerebral palsy, was verbally abused by her supervisor, who threatened to fire her and ridiculed her speech impediment, making the plaintiff physically ill. The plaintiff here has cited no cases supporting her argument that the defendants' actions meet the element of

conduct that is so "extreme and outrageous that it exceeded all possible bounds of decency." Unlike in *Shipman*, defendant Carias was not the plaintiff's supervisor, and he lacked any authority over her. Further, as in *Wiggins*, the plaintiff's alleged emotional distress is not sufficient to meet the element as described by South Carolina courts. In *Talamantes v. Bereley County Sch. Dist.*, 340 F. Supp.2d 684, 688 (D.S.C. 2004), the court dismissed an outrage claim where a supervisor left his pants unbuttoned and unzipped in front of the plaintiff, put his hands on a female employee making pelvic thrusts, invited the plaintiff to watch a pornographic video, and told the plaintiff to lie down because he was horny. The court noted that while the plaintiff was described as being embarrassed, hurt, surprised, shocked, aggravated, scared, and upset by the supervisor's actions, these reactions did not suffice for emotional distress so severe "that no reasonable man could be expected to endure it." *Id.* at 691. At most, the plaintiff in this case was prescribed sleeping pills, which she did not take, and she conferred with family and friends regarding her distress over the telephone calls. There is no evidence of a physical or psychological problem that was related to the acts complained of against these defendants. Based upon the foregoing, the outrage claim against defendant Carias also fails.

### *Section 1983 Claim*

The plaintiff has also alleged a cause of action for gender discrimination under Section 1983. She claims that she failed to receive promotions and was subjected to heightened scrutiny, reprimands and disciplinary actions because of her sex. She further claims that she has suffered mental anguish and emotional distress, as well as the loss of transfers, promotions, and salary increases as a result of the discrimination (comp. ¶¶ 21-22). The only incident alleged in the plaintiff's complaint with regard to these defendants concerns the telephone calls made by the defendants to her on June 5, 2003. While it is

7

unclear from the complaint, it appears that the plaintiff is alleging that the defendants harassed her because of her sex in those telephone calls.

> The equal protection clause confers a right to be free from gender discrimination that is not substantially related to important governmental objectives. Applying this precept, courts have held that intentional sexual harassment of employees by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983. Courts may apply the standards developed in Title VII litigation to similar litigation under § 1983.

*Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (internal citations omitted).

The court must first consider whether the defendants were acting under color of state law when they made the telephone calls. In *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870 (4th Cir. 1989), the Fourth Circuit Court of Appeals stated:

> While it certainly is true that "[a]cts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983," the lack of the outward indicia suggestive of state authority - such as being on duty, wearing a uniform, or driving a patrol car - are not alone determinative of whether a police officer is acting under color of state law. Rather, the nature of the act performed is controlling. The act therefore must be carefully scrutinized to determine whether an officer, when either on or off duty, is acting under color of state law.

*Id.* at 872-73 (internal citations omitted).

In a case similar to this one, *Bailey v. Prince George's County,* 34 F.Supp.2d 1025 (D. Md. 1999), the court found that the conduct of a police lieutenant (Brock) toward a police department civilian employee was a personal interaction and did not constitute action taken under state law. The court reasoned as follows:

> Bailey cites *Revene* to suggest that Brock's actions could be construed a misuse of power, constituting actions taken under color of state law. In *Revene,* plaintiff alleged that an off-duty, out-of-uniform Charles County police officer operating his own vehicle had followed plaintiff's decedent to his home and shot and killed him without provocation. The Fourth Circuit held that such actions could be "viewed as consistent with an officer's misuse of power ⋯ possessed by virtue of state law," thus falling within the purview of § 1983. *Revene*, 882 F.2d at 874.

8

> Bailey invites the Court's attention to the fact that in the present case, the police officer (Brock) was on-duty, in uniform, in the office, and armed with a County-issued gun. The suggestion is that if the deputy sheriff in *Revene* could be held to be acting under color of state law when he was off-duty, out-of-uniform, and away from his station, then where the opposite of those indicia obtain, as in the present case, action under color of state law must necessarily be present.
>
> This logic is flawed and neglects the more critical language of *Revene* which is that "the nature of the act performed is controlling." 882 F.2d at 872. An officer can be on-duty, in uniform, in the station house itself and still not be acting under color of state law. *See, e.g., Stengel v. Belcher*, 522 F.2d at 441 (whether police officer is "in or out of uniform is not controlling"); *Pitchell v. Callan*, 13 F.3d 545, 548 (2d. Cir.1994) (whether police officer was on or off duty when the challenged incident occurred is not dispositive); *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir.1981) (police chief's assault on private citizen, though occurring at police headquarters, is not conduct under color of state law). *Delcambre* offers parallels to the present case. There the chief of police assaulted his sister-in-law on the premises of a municipal police station. The sister-in-law was not arrested nor was she threatened with arrest. Affirming the district court's grant of summary judgment, the Fifth Circuit held that "the altercation arose out of an argument over family and political matters," 635 F.2d at 408, and found no act under color of law as required for § 1983 liability.
>
> The only reasonable conclusion in the case at hand is that Brock was also engaged in a personal interaction. She was not performing a police function nor could she reasonably be believed to be. Instead, she was engaged in an office quarrel with a co-worker she thought had treated her rudely. Taking Bailey's version of the facts to be true, the most that can be said is that Brock, in a fit of pique, overreacted badly. But she did not arrest or threaten to arrest or even lay a hand on Bailey. She momentarily blocked a doorway and placed her hand on her gun. A conventional tort may or may not have occurred, but nothing approaching the violation of a constitutional right took place.

*Id.* at 1027-28.

In support of her argument that the defendants were acting under the color of state law, the plaintiff notes that the defendants were at the Criminal Justice Academy

9

taking classes as Greenville City detectives, they made the telephone calls on City of Greenville cellular telephones, they knew the plaintiff as coworkers at the police department, and they were disciplined for their actions by the police department. For purposes of this motion, this court will assume that defendants Carias and Gardner were acting under color of state law when they made the telephone calls to the plaintiff.

This court must then consider whether the plaintiff's claim for gender discrimination against these defendants can survive summary judgment. As noted above, "[c]ourts may apply the standards developed in Title VII litigation to similar litigation under § 1983." *Beardsley*, 30 F.3d at 529. It appears that the plaintiff is asserting a claim for hostile work environment. To state a hostile work environment claim, the plaintiff must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Bass v. E.I. Dupont de Nemours*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998)). In evaluating whether harassment is severe and pervasive so as to make it actionable under Title VII, the court "must examine the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Hopkins v. Baltimore Gas & Electric*, 77 F.3d 745, 753 (4th Cir. 1996) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

Viewing the evidence in a light most favorable to the plaintiff, the plaintiff was called by the defendants several times on June 5, 2003. In two of the telephone calls, defendant Carias made statements such as, "You bitch, I hate you, I'm going to get you, watch out." In the other telephone call, nothing was said, but the plaintiff heard heavy breathing. Clearly, the harassment at issue was unwelcome. However, the plaintiff has not

shown that the harassment was motivated by her gender. Even assuming that it was motivated by her gender, the plaintiff has not shown that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere.

The Fourth Circuit Court of Appeals has granted summary judgment despite acknowledging allegations, including the following, regarding a male coworker who acted at times as the plaintiff's supervisor:

- telling the plaintiff's supervisor in her presence that she should be "spanked every day," in response to which her supervisor laughed and agreed;

- constantly staring at her breasts and telling her how attractive she was; and

- installing a security camera pointed at her desk so that he could watch her.

*Singleton v. Dept. of Correctional Educ.*, 115 Fed. Appx.119, 120 (4th Cir. Nov. 17, 2004). The offending conduct occurred approximately four times per week for over a year. The court concluded the behavior was not sufficiently severe and pervasive as to alter the conditions of her employment. *Id.* at 122.

In another case, the Fourth Circuit Court of Appeals found that the events alleged by the plaintiff were "simply insufficient to satisfy the requirement 'that the harassment was sufficiently severe or pervasive to create an abusive working environment.'" *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 772 (4th Cir. 1997). In that case, the female plaintiff claimed that one of her male coworkers told her, "We've made every female in this office cry like a baby ... [w]e will do the same to you ... [j]ust give us time, we will find your weakness." *Id.* at 768. Another coworker referred to his former female sales assistant as his "slave" and told the plaintiff that she too "would become the slave." *Id.* A sales representative, upon seeing a woman in a magazine who was "rather buxom and wearing a low-cut T-shirt," stated, "Why don't we have sales associates that

11

look like that[?]" The area manager answered, "Yeah, really." *Id.* When a male coworker took her seat and started using her computer, the plaintiff protested, and the coworker stated, "Why don't you go home and fetch your husband's slippers like a good little wife, that's exactly what my wife is going to do for me." *Id.* at 769. In finding that the plaintiff had not established a hostile work environment claim, the court stated that "not all sexual harassment that is directed at an individual because of his or her sex is actionable. Title VII does not attempt to 'purge the workplace of vulgarity.'" *Id*. at 772.

In the instant case, the improper conduct alleged by the plaintiff consists of telephone calls that took place one night in which defendant Carias called her a "bitch" and threatened to "get her" and another hang-up call later the same night (comp. ¶ 9). The conduct, while juvenile and boorish, does not rise to the level of creating a hostile work environment. Viewing the evidence in a light most favorable to the plaintiff and considering the factors above, summary judgment should be granted on the claim against these defendants.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the motions for summary judgment of defendants Carias and Gardner be granted.

> s/William M. Catoe
> United States Magistrate Judge

November 14, 2006

Greenville, South Carolina

12